Linda J. **PIERCE**, Plaintiff,

v.

**CITIBANK (SOUTH DAKOTA), N.A., a foreign corporation, and Citicorp Credit Services, Inc., a foreign corporation, Defendants.**

Civ. No. 93–343–FR.

United States District Court, D. Oregon.

June 28, 1994.

**1452**

Michael B. Mendelson, Michael B. Mendelson, P.C., Portland, OR, for plaintiff.

John L. Langslet, Michael J. Farrell, Martin, Bischoff, Templeton, Langslet & Hoffman, Portland, OR, for defendants.

## OPINION

FRYE, District Judge:

The matters before the court are (1) the motion of the defendants, Citibank (South Dakota), N.A. and Citicorp Credit Services, Inc., for summary judgment (# 49); and (2) the motion of the plaintiff, Linda J. Pierce, for partial summary judgment (# 65).

## UNDISPUTED FACTS

Linda J. Pierce obtained Citibank Chase VISA Account No. 5424 1800 2276 3277 from defendant Citibank (South Dakota), N.A. (Citibank) based on her own creditworthiness. Her husband, Michael Pierce, maintained several accounts with defendant Citicorp Credit Services, Inc. (Citicorp). Citicorp is a corporate affiliate of Citibank. When Michael Pierce became delinquent on one of the bankcard accounts that he maintained with Citibank, Citicorp closed all of his accounts and the account of Linda Pierce. When Citicorp notified Michael Pierce by letter on January 11, 1991 that it had closed all of his accounts, Citicorp included the account number of Linda Pierce among the account numbers listed. Linda Pierce, who lived with her husband, did not receive notice of the closing of her account, and her name was not included on the notice that was sent to Michael Pierce that her account, Account No. 5424 1800 2276 3277, was closed.

Michael Pierce discussed with Linda Pierce the letter sent to him in conjunction with the closing of the accounts. Shortly after Michael Pierce received the letter of January 11, 1991, he instructed Linda Pierce to look up the account numbers. She determined that her account was included on the list of accounts closed. Linda Pierce identified her account number on the letter of January 11, 1991 by writing "mine" next to it. At that time, Linda Pierce believed that her account had been closed because her husband's account was delinquent. Sometime during the week of January 21, 1991, after Michael Pierce had telephoned Citibank for information, the Pierces discussed the credit problem again. Michael Pierce told Linda Pierce that Citicorp had closed her account because she was living with him.

Linda Pierce continued to receive regular statements on Account No. 5424 1800 2276 3277 and continued to make payments on that account. The statements that she received did not state that her account had been closed or that her credit privileges had been suspended. These statements differed from the statements she had received prior to January 11, 1991 in only one way: there was a $0 in the available credit column, even

though she was within $300 or $400 of her credit limit. It was the understanding of Linda Pierce that the $0 in the available credit column meant that her account had been closed in accordance with the letter of January 11, 1991 sent to Michael Pierce.

On May 15, 1991, Linda Pierce talked by telephone to a customer service representative of Citibank. In that telephone conversation, the customer service representative informed Linda Pierce that she could not use her credit card until the accounts of Michael Pierce were brought current because her account was linked with those of her husband.

On July 18, 1991, Linda Pierce sent a registered letter to Citibank requesting a written response within ten days as to why her account had not been renewed. On September 11, 1991, Citibank renewed the account of Linda Pierce and reinstated her credit privileges. In a letter dated September 11, 1991, Citibank informed Linda Pierce: "I want you to know that we sincerely appreciate the effort you've made to return your account to good standing." Exhibit 4 to Plaintiff's Motion for Partial Summary Judgment.

Linda Pierce used her account until she and Michael Pierce filed a petition in bankruptcy on May 18, 1992. On Schedule B–Personal Property of the Chapter 13 Petition in Bankruptcy filed by the Pierces, Linda Pierce and Michael Pierce stated that they had no contingent or unliquidated claims of any nature.

On March 19, 1993, Linda Pierce filed this action against Citibank and Citicorp. Linda Pierce alleges that her credit card account was closed for improper reasons, that Citicorp failed to give notice as required under the Equal Credit Opportunity Act (ECOA), and that the defendants conspired to, and did conduct, a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d).

On February 4, 1994, Citibank and Citicorp moved to amend their answer to raise the affirmative defenses of statute of limitations, waiver, inadvertent error, judicial estoppel, and setoff. On March 15, 1994, the court granted the motion of Citicorp to amend.

## APPLICABLE STANDARD

■ Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

■ Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## CONTENTIONS OF THE PARTIES

Citibank and Citicorp contend that the fourth and fifth claims of Linda Pierce for relief are barred by the two-year statute of limitations applicable to the filing of claims under the ECOA, 15 U.S.C. § 1691e(f). Citibank and Citicorp contend that their motion for summary judgment should be granted on the first, second and third claims for relief because Linda Pierce has failed to state a claim as alleged under the Racketeering Influenced and Corrupt Organization Act (RICO). Citibank and Citicorp contend that all of the claims of Linda Pierce are barred by the doctrine of judicial estoppel.

Linda Pierce contends that she has established all of her claims as a matter of law, and, as a result, she is entitled to summary judgment in her favor.

## ANALYSIS AND RULING

### 1. *Statute of Limitations Defense*

■ 15 U.S.C. § 1691e(f) provides that an ECOA action shall be commenced no more than two years after the date of the alleged violation. Citibank and Citicorp contend that the fourth and fifth claims for relief of Linda Pierce are barred by 15 U.S.C. § 1691e(f).

■ In her fifth claim for relief, Linda Pierce seeks damages for the failure of Citibank and Citicorp to send a notice of adverse action to her pursuant to 15 U.S.C. § 1691(d). In its opinion dated February 10, 1994, 843 F.Supp. 646, this court held that "[t]he two-year bar of 15 U.S.C. § 1691e(f) runs from the date of discovery with respect to 15 U.S.C. § 1691(d)(2) and (3)." *Id.* at 650. At the time the court issued its opinion of February 10, 1994, the court concluded that the "[d]efendants have not presented any facts which establish that Linda Pierce knew that her account was closed in February, 1991 when Michael Pierce received a letter informing him of the closure of his accounts." *Id.* at 650.

On March 9, 1994, Citibank and Citicorp took the depositions of Linda Pierce and Michael Pierce. In the course of these depositions, Citibank and Citicorp obtained additional information relating to the issue of when Linda Pierce discovered that her account had been closed. Although the court previously granted summary judgment in favor of Linda Pierce on the fifth claim for relief, Citibank and Citicorp move for summary judgment on this claim based on the deposition testimony of Linda Pierce. The court will reconsider its ruling of February 10, 1994 based upon this additional evidence.

In her deposition, Linda Pierce attested that shortly after she received the letter dated January 11, 1991, she looked up her account number to determine if her account was in fact listed in the letter. Linda Pierce also attested that she knew that the "$0" in the column entitled "available credit" on the statement that she received in February, 1991 indicated that her account had been closed. For the purposes of 15 U.S.C. § 1691e(f), the claim of Linda Pierce arose when she discovered that an adverse action had been taken against her. The undisputed evidence indicates that Linda Pierce knew that Citicorp had closed her account sometime in late January of 1991. This action was filed on March 19, 1993, more than two years after Linda Pierce discovered that her account had been closed. Therefore, 15 U.S.C. § 1691e(f) bars Linda Pierce's fifth claim for relief.

■ In her fourth claim for relief, Linda Pierce seeks damages for discrimination based on her marital status pursuant to 15 U.S.C. § 1691(a) of ECOA. Linda Pierce alleges that the discrimination based on her marital status occurred when her account was closed. Linda Pierce was aware of the closure of her account and the association between the closure of her account and the closure of her husband's account in late January of 1991. Therefore, 15 U.S.C. § 1691e(f) also bars Linda Pierce's fourth claim for relief.

### 2. *RICO Claims*

Linda Pierce alleges in her complaint that Citibank and Citicorp "prosecuted an extortionate collection campaign designed to force plaintiff to pay a debt which was not her legal obligation," "exercised economic and/or financial extortion and/or coercion upon plaintiff ... to compel plaintiff to satisfy a

debt which was the sole obligation of plaintiff's husband," and "perpetrated extortion and coercion upon plaintiff ... and have engaged in a *pattern of racketeering activity.*" Complaint, p. 3, para. 5; p. 4, para. 7; and pp. 4–5, para. 8 (emphasis in original).

The pattern of racketeering activity required by RICO is a "showing of a relationship." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399 (9th Cir. 1986). " 'The pattern may be established by showing two or more acts that constitute offenses, conspiracies, or attempts of the requisite type, as long as the defendant committed two of the acts and both of them were connected by common scheme, plan or motive.' " *Id.* (quoting *United States v. Brooklier,* 685 F.2d 1208, 1222 (9th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983)).

In *Medallion Television Enters. v. SelecTV, Inc.,* 833 F.2d 1360 (9th Cir.1987), the plaintiff television broadcaster brought an action for RICO violations against defendant television broadcaster alleging misrepresentations which induced the plaintiff to enter into a joint venture to acquire rights from and to sell telecasts of heavyweight prizefights to pay television and cable television stations. The court addressed the subject of a "pattern of racketeering activity," explaining that:

> Whether the predicate acts alleged or proven are sufficiently related is seldom at issue, and this case is no exception. There is no question that the predicate acts were related: all were directed toward inducing Medallion to enter the joint venture and to provide funds to obtain the telecast rights.
>
> The presence or absence of continuity among the acts is the distinguishing factor in our cases and is the factor that most influences our decision in this case. Continuity does not require a showing that the defendants engaged in more than one "scheme" or "criminal episode." The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat of continuing activity.
>
> Here, that threat is absent. This case involved but a single alleged fraud with a single victim.

833 F.2d at 1363 (citations omitted). The court went on to explain:

> If the fraud alleged here constitutes a pattern of racketeering activity, rare would be the fraud that could not be pleaded as a RICO case. Although we observe *Sedima*'s mandate that RICO be construed broadly, *see* [*Sedima, S.P.R.L. v. Imrex Company, Inc.,*] 473 U.S. [479] at 497, 105 S.Ct. [3275] at 3286, [87 L.Ed.2d 346 (1985)] we cannot believe that Congress intended that RICO should apply to a single, isolated transaction such as this.

*Id.* at 1365.

■ Linda Pierce alleges that, in closing her account, Citibank and Citicorp engaged in "extortionate conduct" because it attempted to force her to pay for her husband's debt through economic coercion. However, Linda Pierce admits that neither Citibank nor Citicorp ever requested that she pay her husband's debt, suggested that her account would remain closed until she paid her husband's debt, or made any threats whatsoever to coerce her to pay the debt of another. The only facts Linda Pierce has established are that the closure of her account was related to the closure of her husband's accounts; that Citicorp failed to personally notify Linda Pierce of the fact that her account was closed; and that, in reinstating her account, the reason Citibank provided was that she had become current on her payments even though she had been current at that time.

While these allegations describe conduct that is related, the court concludes that the allegations do not go beyond the single, isolated transaction that was described in *Medallion.* Linda Pierce attempts to convert a claim for breach of a credit contract into a claim for extortion, and then to convert the extortion claim into a claim for violation of racketeering laws. The court finds that neither the allegations in Linda Pierce's complaint nor the facts that she has presented to the court are sufficient to state a claim for violations of state or federal racketeering laws.

### 3. *Judicial Estoppel*

Because the fourth and fifth claims are barred by the statute of limitations, and be-

cause the first, second and third claims are insufficient as a matter of law, the court need not address the issue of whether Linda Pierce is barred under the doctrine of judicial estoppel.

### 4. *The Sixth Claim for Relief*

In her sixth claim for relief, Linda Pierce requests injunctive relief against Citibank and Citicorp based on her first five claims for relief. Because the first five claims for relief are either time-barred or insufficient as a matter of law, the sixth claim must be dismissed.

## CONCLUSION

The motion of Citibank and Citicorp for summary judgment on all claims (# 49) is granted; and the motion of Linda Pierce for partial summary judgment (# 65) is denied.